# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ROY W. TIGUE,

               Plaintiff,

    v.

PENNSYLVANIA STATE POLICE, et al.,

               Defendants.

CIVIL ACTION NO. 3:23-CV-00130

(MEHALCHICK, M.J.)

## MEMORANDUM

Before the Court is a motion to dismiss filed by Defendants the Pennsylvania State Police ("PSP"), Corporal Sean Smith, Trooper Travis Graziano, Trooper Jamison Warner, Corporal Casey Newcomb, Trooper Robert Wareham, Trooper Cory Blowers, Trooper R. Troiani, Trooper P. Richards, Trooper Robert Munley, Trooper Robert Sibello, Trooper Shamus Kelleher, Corporal Brian Rickard, W. Castaldi, Michael Jezerak, Trooper George Weitz, and Jande and John Does (collectively, "Defendants"). (Doc. 17). *Pro se* Plaintiff Roy W. Tigue ("Tigue") commenced this civil rights pursuant to 42 U.S.C. § 1983 by filing the complaint against Defendants on January 24, 2023. (Doc. 1). At the time Tigue filed the complaint, he was incarcerated at that State Correctional Institution at Laurel Highlands. (Doc. 1). As of February 27, 2023, Tigue was released on parole and filed two notices of change of address. (Doc. 8; Doc. 15). On June 5, 2023, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 63(c). (Doc. 24). For the following reasons, the motion to dismiss will be GRANTED.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Tigue initiated this *pro se* civil rights action by filing a complaint on January 24, 2023. (Doc. 1). The complaint describes four separate interactions between Tigue and

multiple PSP troopers that occurred over the course of more than two years. (Doc. 1, at 15-23). These interactions resulted in Tigue being charged and convicted of numerous criminal offenses in at lease five separate criminal cases. (Doc. 1, at 24-25). Tigue asserts various constitutional claims as a result of these incidents, alleging PSP troopers fabricated evidence, brought false charges, lied in sworn testimony, used excessive force, and conducted illegal searches. (Doc. 1, at 15-22). Tigue also asserts a state law defamation claim for unrelated incidents in which he alleges PSP troopers fraudulently used his name to obtain warranted to search the property of other individuals. (Doc. 1, at 23); *Commonwealth v. Tigue*, Docket No. CP-52-CR-0376-2020. The Court will now summarize each incident in turn.

### A. APRIL 4, 2019 TRAFFIC STOP

Tigue alleges that on April 4, 2019, Defendant Graziano conducted a traffic stop of the van Tigue was operating. (Doc. 1, at 15). Graziano conducted a consensual search of Tigue's vehicle, but did not find any "illegal substances." (Doc. 1, at 15). Tigue avers that Graziano "then turned this into a 'D.U.I.' stop." (Doc. 1, at 15). A review of the criminal docket reveals that Tigue pled guilty to one court of driving under the influence ("DUI"), two misdemeanor counts related to displaying fraudulent license, title and/or registration documents, and multiple summary traffic offenses.[1] (Doc. 23-1, at 5).

Tigue alleges that Graziano lied about the events of the stop in a sworn written affidavit and sworn preliminary hearing testimony "when he stated he ran the license plate of the driven vehicle through a 'J. Net' scan which he claimed came back as I was a suspended driver, or my drivers license was suspended." (Doc. 1, at 15-16). Tigue contends Graziano's

---

[1] The Court may consider public records, including criminal case dispositions, for the purposes of a 12(b)(6) motion. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993).

statement must be fabricated because the license plate on the vehicle was registered to a different individual. (Doc. 1, at 16). Arising out of this incident, Tigue bring claims against Graziano for "lying in sworn statements both written and/or verbal" and for an illegal stop/seizure. (Doc. 1, at 25).

### B. October 12, 2020 Incident

Tigue alleges that on October 12, 2020, four to six PSP vehicles swerved into his lane without warning and attempted to "ram" his vehicle "head on." (Doc. 1, at 17). Tigue claims he immediately pulled to the side of the road, where three PSP troopers forcibly removed him from his vehicle, "slammed" him against a police vehicle, and handcuffed him. (Doc. 1, at 17). Tigue avers a fourth PSP trooper dragged him across the police vehicle and threw him onto the ground, where all four PSP troopers assaulted him. (Doc. 1, at 17). Tigue alleges he was then transported back to PSP Honesdale and charges with "false charges some which were later dropped." (Doc. 1, at 17-18). A review of the criminal docket reveals that Tigue was found guilty of misdemeanor counts of theft and trespass, and a summary county of driving with a suspended license. (Doc. 23-2, at 5); *Commonwealth v. Tigue*, Docket No. CP-64-CR-0375-2020 (C.C.P. Pike Cty.). Tigue was acquitted of reckless enlargement. (Doc. 23-2, at 5); *Commonwealth v. Tigue*, Docket No. CP-64-CR-0375-2020 (C.C.P. Wayne Cty.).

Tigue contends Defendant Blowers lied in both the affidavit of probable cause and his sworn preliminary hearing testimony in order to "cover up" this assault. (Doc. 1, at 18). Tigue further alleges that Corporal Rickard "signed off" on these false statements. (Doc. 1, at 18). Tigue names several other PSP troopers he alleges participated in the "criminal acts" against him, but fails to specify their involvement. (Doc. 1, at 18). Arising out of this incident, Tigue bring constitutional claims for excessive force, false arrest, lying in sworn written and/or oral

testimonies, and fabricating evidence. (Doc. 1, at 25). Tigue also brings state law claims for assault and the unlawful taking of his property. (Doc. 1, at 25).

C.  JULY 15, 2021 INCIDENT

Tigue alleges that on July 15, 2021 Defendant Sibello attempted to "ram" his vehicle "head on" for no apparent reason. (Doc. 1, at 19). Tigue alleges Sibello then lied in sworn written affidavits and sworn oral testimony at an evidentiary hearing regarding the July 15, 2021, incident. (Doc. 1, at 19). A review of the criminal docket reveals that Tigue pled guilty to a misdemeanor count of receiving stolen property. (Doc. 23-3, at 5); *Commonwealth v. Tigue*, Docket No. CP-64-CR-0336-2021 (C.C.P. Wayne Cty.). Misdemeanor charges of fleeing and eluding and criminal mischief, and two summary traffic charges were *nolle prossed*. (Doc. 23-3, at 5); *Commonwealth v. Tigue*, Docket No. CP-64-CR-0336-2021 (C.C.P. Wayne Cty.). Arising out of this incident, Tigue brings claims against Sibello for filing false charges, lying in sworn written and oral testimonies, and fabricating evidence. (Doc. 1, at 24).

D.  JULY 20, 2021 INCIDENT

Tigue avers that on July 20, 2021, several PSP troopers conducted an illegal search of his home and adjoining property. (Doc. 1, at 21). Tigue claims the PSP troopers falsely imprisoned and unlawfully detained his minor son, denying him food, drink, a diaper change, and access to the residence for two hours. (Doc. 1, at 21). Tigue alleges that Defendants used excessive force with Trooper Graziano "needlessly tackled" him and Trooper Troiani "fish hooked" his mouth. (Doc. 1, at 21). Tigue avers that Wayne County Judge Jane Edwards found the search of his property unconstitutional. (Doc. 1, at 22).

A review of the criminal docket reveals that Tigue was charged in two separate criminal cases as a result of the incident. In one case, Tigue pled guilty to one misdemeanor

count of resisting arrest, and the misdemeanor counts of disorderly conduct and possession of drug paraphernalia, along with a summary count of scattering rubbish, were *nolle prossed*. (Doc. 23-4, at 4); *Commonwealth v. Tigue*, Docket No. CP-64-CR-0345-2021 (C.C.P. Wayne Cty.). In the other case, Tigue pled guilty to a misdemeanor count of receiving stolen property, and the two other counts of receiving stolen property were *nolle prossed*. (Doc. 23-5, at 4); *Commonwealth v. Tigue*, Docket No. CP-64-CR-0356-2021 (C.C.P. Wayne Cty.). Arising out of the July 20, 2021, incident, Tigue bring claims for filing false charges, fabricating evidence, false sworn written and/or oral testimonies, excessive force, illegal search and seizure, and false imprisonment. (Doc. 1, at 25).

### E. CLAIMS INVOLVING THIRD-PARTY WARRANTS

Tigue alleges that several PSP troopers slandered and defamed him by knowingly using his name to obtain warrants to search the property of five other individuals. (Doc. 1, at 23). Tigue alleges that Defendants fabricated statements in search warrants on third-parties and falsely attributed these statements to Tigue. (Doc. 1, at 23). Tigue states that he is not a confidential informant and that police do not have "signed or authorized" statements from him supporting these warrants. (Doc. 1, at 23). Tigue alleges the use of his name puts his mental and physical wellbeing at risk. (Doc. 1, at 23). Arising out of these allegations, Tigue brings a state law defamation claim. (Doc. 1, at 23).

## II.   STANDARD OF REVIEW

The plaintiff bears the burden of establishing the existence of subject-matter jurisdiction when challenged under Rule 12(b)(1). *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). A defendant may challenge the existence of subject-matter jurisdiction in one of two fashions: it may attack the complaint on its face, or it may attack

the existence of subject-matter jurisdiction in fact, relying on evidence beyond the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Where a defendant attacks a complaint as deficient on its face, "the court must consider the allegations of the complaint as true." *Mortensen*, 549 F.2d at 891. "In deciding a Rule 12(b)(1) facial attack, the court may only consider the allegations contained in the complaint and the exhibits attached to the complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies; and 'undisputably authentic' documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss." *Medici v. Pocono Mountain Sch. Dist.*, No. 09-CV-2344, 2010 WL 1006917, at *2 (M.D. Pa. Mar. 16, 2010). However, when a motion to dismiss attacks the existence of subject-matter jurisdiction in fact, "no presumptive truthfulness attaches to plaintiff's allegations," and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. Here, the Court has considered a facial challenge to the existence of subject-matter jurisdiction on the Court's own motion. *See Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995) ("Federal courts have an ever-present obligation to satisfy themselves of their subject-matter jurisdiction and to decide the issue *sua sponte* . . . ."); *Johnson v. United States*, Civil No. 1:CV-08-0816, 2009 WL 2762729, at *2 (M.D. Pa. Aug. 27, 2009).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions

which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions . . .'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The court also need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK*

*Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (*citing Phillips v. County of Allegheny*, 515 F.3d at 224, 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

With these standards in mind, *pro se* documents must "be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S.

519, 520–21 (1972). Nevertheless, *pro se* plaintiffs are still subject to the base pleading requirements of Rule 8. *Rhett v. NJ State Superior Court*, 260 F. App'x 513 (3d Cir. 2008). If a complaint fails to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## III.   DISCUSSION

Defendants move to dismiss the complaint for the following reasons: (1) the complaint is impermissible "shotgun" pleading under Federal Rules of Civil Procedure 8(a)(2) and 10(b); (2) Tigue's claims are partially barred by the statute of limitations; (3) Tigue's fabricated evidence claims are barred by *Heck v. Humphrey* because his success in this action would necessarily imply the invalidity of his convictions; (4) Defendants are entitled to absolute immunity for all testimony at Tigue's pretrial hearings; (5) the official-capacity claims and claims against PSP are barred by Eleventh Amendment immunity and the personhood requirement of § 1983; and (6) the complaint fails to state any claim upon which relief may be granted. (Doc. 17; Doc. 23). The Court will address each argument in turn.[2]

---

[2] Tigue appears to fundamentally misunderstand the nature and limits of a Fed. R. Civ. P. 12(b)(6) motion. His brief in opposition to Defendants' motion includes factual assertions that are not contained in his complaint. (Doc. 25, at 1-7). Further, he submitted documents as exhibits to his brief that are not otherwise in the record. (Doc. 25, at 9-16). But, as the standards set forth above show, a Rule 12(b)(6) motion is limited to determining whether Tigue has pleaded a claim upon which relief can be granted, and in making that determination we do not consider documents, such as documentary exhibits, outside the operative complaint. The Court will not consider the exhibits Tigue attaches to his opposition brief. Similarly, "[a]lthough a court on a motion to dismiss ordinarily 'must accept the allegations in the complaint as true,' it is not compelled to accept assertions in a brief without support in the pleadings." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 232 (3d Cir. 2015) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)). "After all, a brief is not a pleading." *Chavarriaga*, 806 F.3d at 232. The Court does not accept the factual assertions in Tigue's briefs that do not appear in his complaint. (Doc. 1; Doc. 25).

A. ABSOLUTE IMMUNITY

In the complaint, Tigue attempts to bring claims against Defendants, alleging that they lied and provided false "verbal sworn testimonies" at preliminary hearings and suppression hearings related to the five underlying criminal cases. (Doc. 1, at 15-25). Defendants contend they are entitled to absolute immunity for all testimony at Tigue's pre-trial hearings. (Doc. 23, at 17).

Witnesses have "absolute immunity with respect to *any* claim based on the witness' testimony." *Franks v. Temple Univ.*, 514 F. App'x 117, 122 (3d Cir. 2013) (emphasis in original) (internal quotation marks omitted); *see also Rehberg v. Paulk*, 566 U.S. 356, 366-67 (2012); *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983); *Williams v. Hepting*, 844 F.2d 138, 140-41 (3d. Cir. 1988) (extending the immunity discussed in *Briscoe* to pretrial proceedings); *DeForte v. Blocker*, No. 2:16-CV-113, 2017 WL 1102655, *7 (W.D. Pa. Mar. 24, 2017) (the plaintiff "cannot premise his § 1983 claim on [state trooper's] alleged act of providing false testimony at the preliminary hearing."). Thus, Tigue may not seek damages from Defendants arising from their alleged false testimony provided at preliminary hearings and suppression hearings related to the underlying criminal cases.

Accordingly, Tigue's claims arising from false testimony at pre-trial hearings are DISMISSED with prejudice as amendment would be futile. *Grayson*, 293 F.3d at 108.

B. ELEVENTH AMENDMENT IMMUNITY

Defendants argue that Tigue's official capacity claims and claims against the PSP are barred by Eleventh Amendment immunity and the personhood requirement of Section 1983. (Doc. 23, at 18). Defendants thus seek dismissal of Tigue's official capacity clams under Fed. R. Civ. P. 12(b)(1) arguing that the Court lacks subject matter jurisdiction over the federal

claims against the PSP since it is entitled to sovereign immunity under the Eleventh Amendment. (Doc. 23, at 18).

The Eleventh Amendment proscribes actions in the federal courts against states, their agencies, and state officials acting within their official capacities. U.S. Const. amend. XI; *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) ("'official-capacity suits generally represent only another way of pleading an action' against the state") (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). There are two circumstances when the Eleventh Amendment does not bar a suit against a state or state agency.[3] First, a state may waive its Eleventh Amendment immunity by consenting to suit. *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Second, Congress may abrogate a state's Eleventh Amendment immunity when it unequivocally intends to do so and when it acts pursuant to a valid grant of constitutional authority. *Geness v. Admin. Off. of Pennsylvania Cts.*, 974 F.3d 263, 269–70 (3d Cir. 2020).

Neither of those circumstances are present here. The Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity. *See* 42 Pa. Stat. and Cons. Stat. Ann. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("Pennsylvania has not waived its sovereign immunity defense in federal

---

[3] Additionally, under *Ex parte Young*, claims against a state official in his or her official capacity for prospective declaratory or injunctive relief are not barred by the Eleventh Amendment. *See Ex parte Young*, 209 U.S. 123 (1908). But *Ex parte Young* "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Moreover, Tigue only seeks monetary damages, not declaratory or injunctive relief, so *Ex parte Young* does not apply.

court."). And 42 U.S.C. § 1983, under which Tigue brings his federal claims, does not override a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332 (1979).

"The Pennsylvania State Police is an arm of the Commonwealth of Pennsylvania." *Frein v. Pennsylvania State Police*, 47 F.4th 247, 257 (3d Cir. 2022). As an arm of the state, the PSP is entitled to Eleventh Amendment immunity. Because Tigue's claims against the PSP are barred by the Eleventh Amendment, those claims are DISMISSED without prejudice for lack of subject-matter jurisdiction. *See New Jersey Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 241 n.8 (3d Cir. 2011) (noting that the "dismissal for lack of subject matter jurisdiction was by definition without prejudice"); *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999) (agreeing with plaintiff that because a dismissal for lack of subject-matter jurisdiction "is not an adjudication on the merits," such a dismissal should be "without prejudice").

Claims for damages against a state official in his or her official capacity are also barred by the Eleventh Amendment. Official-capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978). In an official-capacity suit, the entity of which the officer is an agent is the real party in interest. *Kentucky*, 473 U.S. at 166. As such, claims against state officials in their official capacities for damages are treated as suits against the state and are barred by the Eleventh Amendment. *Christ the King Manor, Inc.*, 730 F.3d at 318. Thus, Tigue's claims for damages against PSP employees in their official capacities are barred by the Eleventh Amendment. As such, those claims are DISMISSED without prejudice for lack of subject-matter jurisdiction.

C. FEDERAL RULE OF CIVIL PROCEDURE 8(A)(2) AND 10(B)

Before undertaking any analysis of Tigue's claims under Rule 12(b)(6), the Court finds that Tigue's complaint fails to comply with Federal Rule of Civil Procedure 10(b), which requires a plaintiff to "state its claims or defenses in number paragraphs, each limited as par as practicable to a single set of cicumstances," and Federal Rule of Civil Procedure 8(a)(2), which requires "[a] pleading that states a claim for relief" to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Complaints that violate this rule "are often disparagingly referred to as 'shotgun pleadings.' " *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).

The Third Circuit has criticized "the all too common shotgun pleading approach" to complaints. *Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031 n.13 (3d Cir. 1988); *see also Wright v. City of Phila.*, No. 01-6160, 2005 WL 3091883, at *11 (E.D. Pa. Nov. 17, 2005) (citing *Hynson* for the proposition that "[t]he Third Circuit . . . has a policy against Plaintiffs using a 'shotgun pleading approach' . . . and requires civil rights cases [to] be plead[ed] with considerable specificity."). Requiring a plaintiff to plead facts with specificity "ha[s] a twofold purpose: 1) to weed out at an early stage frivolous claims and those that should be heard in state court, and 2) to provide the defendant with sufficient notice of the claims asserted." *Hynson*, 864 F.2d at 1031 n.13.

The United States Court of Appeals for the Eleventh Circuit has articulated the bulk of existing law in this area.[4] The Eleventh Circuit categorized shotgun pleadings into four

---

[4] District courts within the Third Circuit often cite to the Eleventh Circuit for this law. *See, e.g., Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (collecting cases); *Lapella v. City of Atlantic City*, No. 10-2454, 2012 WL 2952411, at *5 n.3 (D.N.J. July 18, 2012) (criticizing the plaintiff's shotgun pleadings and citing as legal support: *Anderson v. Dist. Bd. of Trs.*, 77 F.3d 364 (11th Cir. 1996); *Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955 (11th Cir. 2008); and *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1356 n.9 (11th Cir. 2002)); Litwak v.

different types: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts"; (2) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that does "not separat[e] into a different count each cause of action or claim for relief"; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1321-23. The "unifying characteristic" of these four types of shotgun pleadings "is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323.

In describing the "relatively rare" fourth type of shotgun pleading, the Eleventh Circuit cited two of its earlier decisions as illustrative examples. *See Weiland*, 792 F.3d at 1323 n.14. In *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001), the court found that a complaint that was fifty-eight pages long, named fourteen defendants, and charged all defendants in each count was "a quintessential 'shotgun' pleading," because it was "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of." Similarly, in *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th Cir. 1997), the court described as a "prototypical 'shotgun complaint,'" one that "offered vague and conclusory factual

---

Tomko, No. 16-0446, 2017 WL 168053, at *4 (M.D. Pa. Jan. 17, 2017) (ordering the plaintiff to "replead with more specificity" and citing as legal support *Anderson*, 77 F.3d at 367 n.5, and *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1127 (11th Cir. 2014)).

allegations in an effort to support a multiplicity of discrimination claims leveled against 15 defendants."

Here, Tigue's complaint describes five separate events, each associated with a criminal case, and asserts claims against multiple Defendants without specifying which Defendant is responsible for which acts or omissions. (Doc. 1, at 15-25). The complaint contains conclusory, vague, and immaterial facts not obviously connected to any particular cause of action and fails to separate into a different count each cause of action. (Doc. 1, at 15-25). In light of the foregoing, the Court concludes that Tigue's complaint "fail[s] . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. Not only is it unclear which of the vague causes of action in Tigue's complaint pertain to which Defendants, but it is also unclear whether certain claims are brought against certain Defendants in their individual or official capacities. Therefore, the Court finds that Tigue's complaint is a "shotgun pleading" that fails to comply with Rule 8(a)(2).

Accordingly, the complaint is DISMISSED without prejudice for failure to comply with the Federal Rules of Civil Procedure.

D.  STATUTE OF LIMITATIONS

Defendants move to dismiss Tigue's claims for excessive force, illegal seizure, and state law torts that pre-date January 24, 2021, as barred by the statute of limitations. (Doc. 23, at 13). In opposition, Tigue attempts to argue that his claims are not barred by the statute of limitations because he diligently pursued his legal rights by filing a letter with the PSP Bureau of Integrity and Professional Standards on October 21, 2021, and he did not discovery his injury from excessive force until September 2021 when a mental health professional

diagnosed him with post-traumatic stress disorder. (Doc. 25, at 2-3). In addition, Tigue requests that the statute of limitations be equitably tolled to account for the four months that he was incarcerated and did not have access to legal materials. (Doc. 25, at 3).

Claims brought pursuant to § 1983 are "governed by the statute of limitations that applies to personal injury tort claims in the state in which such a claim arises." *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir. 2009). In Pennsylvania, a two-year statute of limitations governs personal injury claims, including claims for false arrest and imprisonment, malicious prosecution, malicious abuse of process, ineffective assistance of counsel, wrongful conviction and sentence, and Fourth Amendment and due process violations. *See* 42 Pa. C.S.A. § 5524(1) (two-year limitations period applies to "false imprisonment, false arrest, malicious prosecution or malicious abuse of process"); § 5524(7) (two-year limitations period applies to "[a]ny other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct"); *see also, e.g., Philadelphia, Law Dep't*, 767 F. App'x 262, 264 (3d Cir. 2019); *Kehres v. Pennsylvania*, 262 F. App'x 466, 469 (3d Cir. 2008); *Nicholas v. Heffner*, 228 F. App'x 139, 141 (3d Cir. 2007) ("Nicholas's Fourth Amendment claim accrued when he appeared before a magistrate and was bound over for trial or arraigned on charges."); *Petaccio v. Davis*, 76 F. App'x 442, 444 (3d Cir. 2003).

Here, Tigue first brings a claim against Defendant Trooper Graziano alleging that he was subjected to an illegal vehicle stop and seizure on April 4, 2019. (Doc. 1, at 15-16, 24). An illegal seizure claim accrues when the plaintiff knew or should have known about the seizure. *See Estate of Lagano v. Bergen Cty. Prosecutor's Off.*, 769 F.3d 850, 860-61 (3d Cir. 2014). As Tigue knew about the allegedly illegal seizure on the date it occurred, the statute of limitations for this claim expired in April 2021. *See Estate of Lagano*, 769 F.3d at 860-61. As

Tigue did not file the instant complaint until January 24, 2023, the illegal seizure claim related to the April 4, 2029, incident is now time-barred and DISMISSED with prejudice.

Second, Tigue asserts a claim for excessive force and state law tort claims for assault and unlawful seizure against unnamed PSP Troopers, stemming from Tigue's arrest on October 12, 2020. (Doc. 1, at 17-18, 24). Again, Tigue knew of the alleged conduct underlying his claims on the date they occurred. Thus, the two-year statute of limitations to file his claims expired in October 2022. *See Farrow v. City of Philadelphia*, No. 20-CV-5792, 2021 WL 2778554, at *2 (E.D. Pa. July 1, 2021). Accordingly, the excessive force claim and state law tort claims related to the October 12, 2020, incident are now time-barred and DISMISSED with prejudice.

E. *Heck*-barred Claims

Next, Defendants seek to dismiss Tigue's fabricated evidence claims as barred by *Heck v. Humphrey*. (Doc. 23, at 15). In *Heck*, the United States Supreme Court explained:

> [T]o recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."

512 U.S. at 486–87 (footnote omitted).

"Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487; *see also Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) ("[A] state prisoner's § 1983 action

is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)).

Here, Tigue claims Defendant PSP troopers fabricated evidence and falsified testimony regarding the circumstances of their interactions with Tigue and misrepresented information they obtained from JNET. (Doc. 1, at 15-22). In general, a fabrication-of-evidence claim under section 1983 implicates the Due Process Clause of the Fourteenth Amendment. *See Black v. Montgomery Cty.*, 835 F.3d 358, 370 (3d Cir. 2016) ("Fabricated evidence is an affront to due process of law, and state actors seeking to frame citizens undermine fundamental fairness and are responsible for 'corruption of the truth-seeking function of the trial process.'") (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976)); *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014) ("[W]e hold that if a defendant has been convicted at a trial at which the prosecution has used fabricated evidence, the defendant has a stand-alone claim under section 1983 based on the Fourteenth Amendment if there is a reasonable likelihood that, without the use of that evidence, the defendant would not have been convicted."). As relief, Tigue demands monetary damages for "loss of income, loss of freedom, loss of time with family, loss of mental health, mental anguish, punitive damages, etc." (Doc. 1, at 12).

However, claims asserting that a litigant's conviction is based on fabricated evidence are barred by *Heck*. *See McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) (*Heck* applied to litigant's claims "asserting that fabricated evidence was used to pursue a criminal judgment"). To plead a fabricated evidence claim, a plaintiff must plead that he evidence was fabricated,

that the evidence was used against him at trial resulting in his conviction, and that "there is a reasonable likelihood that, without the use of that evidence, the [plaintiff] would not have been convicted." *Halsey*, 750 F.3d at 294-95. Because such a claim requires a showing that the plaintiff likely would not have been convicted in the absence of the alleged fabricated evidence, a meritorious *Halsey* fabricated evidence claim necessarily implies the invalidity of the underlying conviction and is thus barred by *Heck* until the underlying conviction is overturned. *See Ortiz v. New Jersey State Pol.*, 747 F. App'x 73, 77-78 (2018).

Indeed, Tigue's claims are barred by *Heck* even though he seeks only damages and does not explicitly seek to invalidated his federal convictions. In a line of decisions, the Supreme Court has repeatedly held that a prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973); *see also Wolff v. McDonnell*, 418 U.S. 539, 554 (1974); *Heck*, 512 U.S. at 481; *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). Subsequently, in *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005), the Supreme Court reiterated that under *Heck*, "a prisoner cannot use § 1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence." As explained by the Court in *Wilkinson*, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson*, 544 U.S. at 81-82.

Tigue has not alleged that his criminal convictions were reversed on appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus. Thus, because his success on his claims of

fabricated evidence and falsified testimony would necessarily imply the invalidity of those convictions, the Court finds that Tigue's claims alleging Defendants fabricated evidence and lied in sworn statements are *Heck* barred. Accordingly, Tigue's falsified testimony and fabricated evidence claims are DISMISSED with prejudice.

F.   FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

Tigue's complaint purports to bring claims against Defendants for various constitutional violations, including excessive force, lying in sworn testimony, police brutality, malicious prosecution, fabricated evidence, false imprisonment, illegal search and seizure, and intimidation. (Doc. 1, at 24-25). With respect to the remaining claims that are not otherwise dismissed as time-barred, *Heck*-barred, or for lack of subject-matter jurisdiction, Defendants move to dismiss the complaint for failure to state a claim upon which relief may be granted. (Doc. 23, at 18-20). In opposition, Tigue contends the complaint sufficiently states plausible causes of action against Defendants. (Doc. 25, at 4-5). The Court will address each remaining claim in turn.

1.   **False Arrest and Malicious Prosecution**

Liberally construing the complaint, Tigue asserts a false arrest and/or false imprisonment claim on behalf of his minor son, alleging that Defendants unlawfully detained his son during the July 20, 2021, search. (Doc. 1, at 21). Tigue does not appear to allege that he was false arrested or imprisoned during this incident. However, while the complaint does not expressly allege a claim for malicious prosecution, the Court will construe Tigue's assertion that Defendants filed false charges against him as a claim for malicious prosecution. (Doc. 1, at 24-25). Defendants argue that Tigue's claims fail because he has failed to plead the

elements of a Fourth Amendment claim and Tigue, as a non-attorney parent, is not permitted to proceed *pro se* on behalf of his children in federal court. (Doc. 23, at 21-22).

An arrest requires some seizure of the person through application of physical force or, where that is absent, submission to the assertion of authority. *See California v. Hodari*, 499 U.S. 621, 624 (1991). A non-attorney parent is not permitted to proceed *pro se* on behalf of his child in federal court. *Osei-Afriyie by Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3D Cir. 1991). Tigue does not allege that he was physically arrested or otherwise forced to submit to an assertion of authority. Therefore, he cannot state a claim for false arrest under the Fourth Amendment. *See Penberth v. Krajnak*, No. 3:06-CV-1023, 2008 WL 509174, at *14 (M.D. Pa. Feb. 21, 2008); *Moyer v. Borough of North Wales*, No. 00-CV-1092, 2001 WL 73428, at *2 (E.D. Pa. Jan. 25, 2001); *see also Johnson v. Barker*, 799 F.2d 1396, 1399 (9th Cir. 1986).

Tigue's claim of malicious prosecution also fails. To state a malicious prosecution claim, a plaintiff must show that: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). Although prosecutors typically initiate proceedings against criminal defendants, liability for malicious prosecution can also attach when "[a] defendant influences a third party to initiate the proceedings." *Bristow v. Clevenger*, 80 F. Supp. 2d 421, 432 (M.D. Pa. 2000) (citing *Gilbert v. Feld*, 788 F. Supp. 854, 861 (E.D. Pa. 1992)). A law enforcement officer may be liable for malicious prosecution where he "influenced or participated in the

decision to institute criminal proceedings." *Halsey*, 750 F.3d at 297 (citing *Sykes v. Anderson, 625 F.3d 294, 308–09, 317 (6th Cir. 2010)*).

Tigue has not pleaded with requisite specificity his malicious prosecution claim. While he *may* have described conduct of Defendants to file false charges against him with respect to four of the five underlying criminal cases at issue, he has offered no allegation that suggests which Defendant initiated the criminal proceedings against him. (Doc. 1, at 24-25). Further, Tigue does no assert whether the proceedings ended in his favor or whether he suffered any deprivation of liberty as a result. (Doc. 1, at 17-25). Tigue has not alleged factual assertions to establish a plausible claims that Defendants made false statements, the false statements were connected to the criminal offenses with which he was charges, or that the false statement had any bearing on a probable cause determination. Therefore, Tigue has failed to plead the elements of a malicious prosecution claim and his conclusory assertions are insufficient to state a plausible cause of action.

Accordingly, Tigue's false arrest and/or imprisonment and malicious prosecution claims are DISMISSED.

### 2.  **Unreasonable Search and Seizure**

In the complaint, Tigue asserts that Defendants violated his rights against illegal searches and seizures under the Fourth Amendment on July 20, 2021. (Doc. 1, at 21-22, 25). Tigue alleges that Defendants Trooper Graziano, Trooper Richards, and Corporal Smith illegally search his home, shed, and/or property, detained his 2-year-old son, and seized unidentified items. (Doc. 1, at 21-22, 25). Tigue asserts "[t]he unknowns here will be known as John Does numbers 1, 2, 3, 4, 5, 6, 7, 8, and Jane Does numbers 1, 2, 3, 4, 5, did knowingly

and or intentionally use my name falsely in an open and dangerous way to obtain multiple 'body warrants' and or 'search warrants.'" (Doc. 1, at 23).

The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. To state a § 1983 claim for unreasonable search and seizure, a plaintiff must establish that: (1) the actions of the police officers constituted a search or seizure within the meaning of the Fourth Amendment; and (2) the actions were unreasonable in light of the surrounding circumstances. *Brower v. Cty. of Inyo*, 489 U.S. 593, 597-99 (1989). A search under the Fourth Amendment occurs when the government physically intrudes on one's constitutionally protected areas, *Florida v. Jardines*, 569 U.S. 1, 5 (2013), or invades one's reasonable expectation of privacy. *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring); *Kyllo v. United States*, 533 U.S. 27, 33 (2001). Claims for unlawful search and seizure are governed by a similar standard as those for false arrest and imprisonment: that is, a plaintiff must establish that he was subjected to a seizure without probable cause. *See Kauffman v. Barbagello*, No. 1:13-CV-00659, 2013 WL 6388487, at *18 (M.D. Pa. Dec. 5, 2013) (citing *James v. City of Wilkes-Barre*, 700 F.3d 675, 682 (3d Cir. 2012)).

Here, Tigue alleges that Defendants Trooper Graziano, Trooper Richards, Corporal Smith and John and Jane Does entered and searched his home, shed, and/or property. (Doc. 1, at 22-23). However, Tigue does not allege that the search and/or seizure was conducted with a warrant or in the absence of probable cause. Thus, Tigue fails to state a claim upon which relief may be granted. Even if the search was conducted without a warrant, the Court notes that a search by law enforcement without a warrant is not automatically illegal. "One

23

well-recognized exception [to the warrant requirement] applies when the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 563 U.S. 452, 460 (2011). As pleaded, Tigue has not sufficiently alleged an illegal search or seizure and violation of his Fourth Amendment rights.

Accordingly, Tigue's illegal search and seizure claims against Defendants are DISMISSED.

### 3. **Excessive Force**

In the complaint, Tigue alleges that Defendants Graziano, Wareham, Troiani, and Smith used excessive force against him during the July 20, 2021, incident, "needlessly" tackling him and "fish hook[ing]" his mouth. (Doc. 1, at 21). The Court liberally construes this allegation as arising under the Fourth Amendment.

"In order to properly raise a Fourth Amendment excessive force claim, a plaintiff must first allege that a seizure occurred. *Rivas v. City of Passaic,* 365 F.3d 181, 183 (3d Cir. 2004) (quoting *Curley v. Klem,* 298 F.3d 271, 279 (3d Cir.2 002). A seizure has taken place if an officer restricts a person's freedom to walk away. *Rivas*, 365 F.3d at 198 (quoting *Tennessee v. Garner,* 471 U.S. 1, 7 (1985)). Furthermore, the Third Circuit stated that "[t]he use of excessive force is itself an unlawful seizure under the Fourth Amendment." *Couden v. Duffy,* 446 F.3d 483, 496 (3d Cir. 2006).

After the plaintiff alleges that a seizure has occurred, the plaintiff must then allege that the seizure was objectively unreasonable. *See Graham v. Connor,* 490 U.S. 386, 88-89 (1989) (holding that courts should analyze a Fourth Amendment excessive force claim stemming from an arrest, investigatory stop, or other type of seizure under the objective reasonableness

standard). In examining the use of excessive force under the Fourth Amendment's objective

reasonableness standard, the Third Circuit held:

> An excessive force claim must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "must embody the allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are often tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443. The inquiry turns on "objective reasonableness," meaning that the standard is whether the police officer's "actions [were] 'objectively reasonable' in light of the facts and circumstances" facing the officer, regardless of the officer's intent and motivation. *Id.* at 3397, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443.
>
> *Rivas,* 365 F.3d at 198.

In the context of a § 1983 claim, a three-part test is used to determine reasonableness

of the force used. *See Graham,* 490 U.S. at 396. The following non-exhaustive list of factors

should be considered: (1) "the severity of the crime at issue"; (2) "whether the suspect poses

an immediate threat to the safety of the officers or others"; and (3) "whether [the suspect] is

actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396 (citing

*Garner,* 471 U.S. at 8-9 (the question is "whether the totality of the circumstances justifie[s] a

particular sort of . . . seizure")). The Third Circuit has presented several more factors to be

considered in addition to those set forth by the United States Supreme Court, including: (4)

"[whether] the physical force applied was of such an extent as to lead to injury;" (5) "the

possibility that the persons subject to the police action are themselves violent or dangerous;"

(6) "the duration of the action;" (7) "whether the action takes place in the context of effecting

an arrest;" (8) "the possibility that the suspect may be armed;" and (9) "the number of persons

with whom the police officers must contend at one time." *Estate of Smith v. Marasco,* 430 F.3d

140, 150 (3d Cir. 2005) (quoting *Sharrar v. Felsing,* 128 F.3d 810, 821-22 (3d Cir. 1997)).

First, the application of physical force to restrain movement constitutes a Fourth Amendment seizure. *United States v. Dupree,* 617 F.3d 724, 726 (3d Cir.2010). Because Tigue was seized, the Court inquires as to whether the force used to effect that seizure was excessive and therefore unreasonable. (Doc. 1, at 21). However, Tigue has failed to allege sufficient facts to establish a plausible claim that Defendants' conduct was unreasonable. Tigue alleges that on July 20, 2021, Defendants used excessive force when Trooper Graziano "needlessly tackled" him, and Trooper Graziano and Trooper John Doe "assaulted" him, while Trooper Troiani "fish hooked [his] mouth with his finger touching [his] neck." (Doc. 1, at 21). Tigue further states that he "believe[s] [he] suffered an untreated concussion from impact with troopers and, or on the hard Earth." (Doc. 1, at 21). The Court finds that Tigue does not set forth any facts or circumstances of the alleged encounter, the duration of the incident, what Tigue was doing when the Defendants used force, or why the force used was unwarranted. (Doc. 1); *see Graham,* 490 U.S. at 396; *Sharrar,* 128 F.3d at 821-22. Therefore, the Court finds that Tigue has not please a plausible claim of excessive force in violation of the Fourth Amendment.

Accordingly, Tigue's excessive force claim against Defendants is DISMISSED.

### 4. **Defamation and Slander**

In the complaint, Tigue attempts to bring a state law claim for defamation, alleging Defendants falsely used his name in multiple search warrants. (Doc. 1, at 23). Tigue avers that in June of 2021, Defendants "John Does numbers 1, 2, 3, 4, 5, 6, 7, 8, and Jane Does numbers 1, 2, 3, 4, 5" "slander[ed]" him and "defam[ed]" his name when they "knowingly and or intentionally use my name falsely in an open and dangerous way to obtain multiple 'body warrants' and or 'search warrants.'" (Doc. 1, at 23).Moving to dismiss the complaint,

Defendants argue that they are entitled to sovereign immunity for Tigue's defamation claim because the Commonwealth has not waived sovereign immunity for intentional torts and none of the ten exceptions to the sovereign immunity doctrine apply in this case. (Doc. 23, at 24). In addition, Defendants argue Tigue fails to state a claim for defamation because he does not aver what defamatory statements Defendants allegedly made. (Doc. 23, at 24).

It is well established that the Commonwealth and its employees and officials enjoy immunity from most state law claims. *See* 1 Pa. C.S.A. § 2310; *Brautigam v. Fraley*, 684 F. Supp. 2d 589, 593 (M.D. Pa. 2010) ("If the Commonwealth is entitled to sovereign immunity . . . then its officials and employees acting within the scope of their duties are likewise immune") (quoting *Moore v. Commonwealth*, 538 A.2d 111, 115 (Pa. Cmwlth. 1988)); *see also Larsen v. State Employees' Retirement System*, 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008) (holding "[s]overeign immunity applies to Commonwealth employees in both their official and individual capacities"). The Pennsylvania General Assembly has provided only nine specific exceptions to this general grant of immunity, none of which are applicable in this case. *See* 42 Pa.C.S. § 8522(b).[5] Moreover, this Court has specifically held that Commonwealth agency employees are entitled to sovereign immunity for state law defamation claims. *See Boone v. Pa. Office of Vocational Rehabilitation*, 373 F. Supp. 2d 484, 495 (M.D. Pa. 2005) (citing *Yakowicz v. McDermott*, 548 A.2d 1330 (Pa. Cmwlth. 1988)).

Accordingly, Defendants are entitled to sovereign immunity on Tigue's state law claims.

---

[5] The nine categories of cases for which immunity has been waived are vehicle liability; medical-professional liability; care, custody and control of personal property; Commonwealth real estate, highways and sidewalks; potholes and other dangerous conditions; care, custody and control of animals; liquor store sales; National Guard activities; and toxoids and vaccines. 42 Pa.C.S. § 8522(b).

## IV.   LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment unless an amendment would be inequitable or futile. *See Grayson*, 293 F.3d at 108; *Shane v. Fauver,* 213 F.3d 113, 116-17 (3d Cir. 2000). The Third Circuit has also acknowledged that a district court has "substantial leeway in deciding whether to grant leave to amend." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000); *see also Ruffin v. Mooney*, No. 3:16-CV-1987, 2017 WL 3390361, at *2 (M.D. Pa. Jan. 31, 2017) (dismissing prisoner-plaintiff's case without prejudice where it was unclear whether he was seeking relief under § 1983 or a habeas statute). Here, the Court finds that Tigue's claims arising from false testimony at pre-trail hearings are barred by absolute immunity, Tigue's claims against the PSP and PSP employees, in their official capacities, are barred by the Eleventh Amendment, and Tigue's defamation and slander claims are barred by sovereign immunity. In addition, the Court finds that Tigue's claims related to the April 4, 2019, and October 12, 2020, incidents are time-barred and his fabricated evidence claims are *Heck*-barred. Therefore, these claims will be dismissed with prejudice.

However, since Tigue is proceeding *pro se*, Tigue will be granted leave to amend his complaint to cure the deficiencies set forth in this Memorandum Opinion regarding his § 1983 Fourth Amendment claims. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) (recognizing that district courts, before dismissing a case for failure to state a claim, must give the plaintiff an opportunity to amend the complaint, whether or not the plaintiff has asked to do so, unless further amendment would be inequitable or futile) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).

**V.**   **CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss is **GRANTED**. (Doc. 17).

An appropriate Order follows.

Dated: October 30, 2023                           *s/ Karoline Mehalchick*
                                                  **KAROLINE MEHALCHICK**
                                                  **Chief United States Magistrate Judge**